## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERRA HEALTHCARE CORPORATION | ) | |
| | ) | Case No. 03-10254 (MFW) |
| Debtor. | ) | |
| | ) | **Re: Docket No. 2250, 2251, 2293, 2295** |
| | ) | |

### NOTICE OF APPEAL

The above-captioned reorganized debtor (the "Reorganized Debtor") hereby

appeals under 28 U.S.C. § 158(a) from the order of the United States Bankruptcy Court for the

District of Delaware, as amended [Docket No. 2295] (the "Order") and accompanying opinion

[Docket No. 2293] (the "Opinion"), granting the motions of Philadelphia Newspapers

Newspapers, LLC ("Philadelphia Newspapers") to intervene in this proceeding (the "Motion to

Intervene") and for Access to Judicial Records and Proceedings (the "Motion for Access," and

together with the Motion to Intervene, the "Motions") [Docket Nos. 2250 and 2251]. The Order

was entered in this case on October 16, 2006.

The names of all parties to the order appealed from and the names, addresses and

telephone numbers of the respective attorneys are as follows:

1.    **Reorganized Debtor**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady
John T. Dorsey
Sean T. Greecher
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

2.    **Philadelphia Newspapers**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
Carl N. Kunz, III
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899
Telephone: (302) 888-6811
Facsimile: (302) 571-1750

- and –

DECHERT LLP
Michael E. Baughman
David K. Inscho
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222

Dated: Wilmington, Delaware
October 24, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Sean T. Greecher (No. 4484)
1000 West Street, 17th Floor
The Brandywine Building
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600

Counsel to the Reorganized Debtor

DB01:2220988.1                                                          058574.1001

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE
Clerk of the Court
824 Market Street
Wilmington,  DE  19801
(302) 252-2900

Date:   November 28, 2006

To:  Peter Dalleo, Clerk
U. S. District Court, District of Delaware
U. S. Courthouse - 844 King Street
Wilmington,  DE  19801

Re:      Alterra Health Care
Case No. 03-10254 MFW
BAP 06-69
(New Case)

Enclosed,  please find the bankruptcy Record on Appeal  # AP 06-69.


Sincerely,

David Bird, Clerk

By:  _/s/ Ken Brown____
Deputy Clerk

Filing fee paid on 10/25/06

_____ Filing fee not paid

TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT

Case Number: 03-10254 MFW
Deputy Clerk Transferring Case: Kenneth Brown 302 252 2900 x 5126
Case Type: Appeal - BAP 06-69


Order, Date Entered and Issues

Docket 2294

Order GRANTING Philadelphia Newspapers LLC's Motions to Intervene and for Access to
Judicial Records and Proceedings (related document(s) 2251, 2258, 2250, 2259, 2069, 2115,
2215, 2070, 2116, 2183, 2293 ) Order Signed on 10/16/2006. (CAF, ) (Entered: 10/16/2006)

Docket 2295

AMENDED Order (related document(s) 2293, 2294 ) Amending Docket Number of related
documents to Docket No. 2212 instead of 2215. Order Signed on 10/16/2006. (CAF, ) (Entered:
10/16/2006)


Debtors:  Alterra Healthcare Corporation
Counsel:  Sean Greecher
          Young, Conaway, Stargatt & Taylor
          The Brandywine Building
          1000 West Street, 17th Floor
          Wilmington, DE 19801
Telephone:    (302) 571 6600

Appellant(s):  Alterra Healthcare Corporation
Counsel:  Sean Greecher
          Young, Conaway, Stargatt & Taylor
          The Brandywine Building
          1000 West Street, 17th Floor
          Wilmington, DE 19801
Telephone:    (302) 571 6600

Appellee: Philadelphia Newspapers
Counsel:  Carl Kunz III
          Morris James Hitchens & Williams LLP
          222 Delaware Ave 10 Fl
          Wilmington, DE 19801-1621
Telephone:    (302) 888 6800

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              )   Chapter 11
                                    )
ALTERRA HEALTHCARE CORPORATION      )   Case No.  03-10254 (MFW)
                                    )
                Debtor.             )

## ORDER

**AND NOW**, this **16th** day of **OCTOBER**, **2006**, after consideration of Philadelphia Newspapers, LLC's Motions to Intervene and for Access to Judicial Records and Proceedings, it is hereby

**ORDERED** that the Motions are **GRANTED**, and it is further

**ORDERED** that the following orders of this Court are **VACATED**:

(1) April 27, 2005, Order Authorizing the Reorganized Debtor to File Under Seal the Application to Approve Nine Settlements by and Among the Debtor and Various Claimants (Dkt. 2069);

(2) July 27, 2005, Order Approving the Reorganized Debtor's Motion to File Applications to Approve Certain Personal Injury Tort Settlements By and Among the Reorganized Debtor and Personal Injury Tort Claimants (Dkt. 2115); and

(3) January 31, 2006, Order Approving the Reorganized Debtor's Motion to File Exhibit to Reserve Motion Under Seal (Dkt. 2215); and it is further

**ORDERED** that Docket Numbers 2070, 2116, and all exhibits to

Docket Number 2183 are **UNSEALED**.

Dated: October 16, 2006                BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Carl N. Kunz, III, Esquire [1]

---

[1]  Counsel is to distribute a copy of this Order and the
accompanying Opinion on all interested parties and file a
Certificate of Service with the Court.

SERVICE LIST

Carl N. Kunz, III, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
Counsel for Philadelphia Newspapers, LLP

Michael E. Baughman, Esquire
David K. Inscho, Esquire
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Counsel for Philadelphia Newspapers, LLP

Robert S. Brady, Esquire
John T. Dorsey, Esquire
Sean T. Greecher, Esquire
Yong Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
The Brandywine Building
Wilmington, DE 19801
Counsel for the Reorganized Debtor

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )   Chapter 11
                                )
ALTERRA HEALTHCARE CORPORATION  )   Case No.  03-10254 (MFW)
                                )
              Debtor.           )


**AMENDED ORDER**

**AND NOW**, this **16th** day of **OCTOBER**, **2006**, after consideration
of Philadelphia Newspapers, LLC's Motions to Intervene and for
Access to Judicial Records and Proceedings, it is hereby

**ORDERED** that the Motions are **GRANTED**, and it is further

**ORDERED** that the following orders of this Court are **VACATED**:

(1) April 27, 2005, Order Authorizing the Reorganized
Debtor to File Under Seal the Application to Approve Nine
Settlements by and Among the Debtor and Various Claimants (Dkt.
2069);

(2) July 27, 2005, Order Approving the Reorganized
Debtor's Motion to File Applications to Approve Certain Personal
Injury Tort Settlements By and Among the Reorganized Debtor and
Personal Injury Tort Claimants (Dkt. 2115); and

(3) January 31, 2006, Order Approving the Reorganized
Debtor's Motion to File Exhibit to Reserve Motion Under Seal
(Dkt. 2212); and it is further

**ORDERED** that Docket Numbers 2070, 2116, and all exhibits to Docket Number 2183 are **UNSEALED**.

Dated: October 16, 2006                    BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Carl N. Kunz, III, Esquire [1]

---

[1] Counsel is to distribute a copy of this Order and the accompanying Opinion on all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

Carl N. Kunz, III, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
Counsel for Philadelphia Newspapers, LLP

Michael E. Baughman, Esquire
David K. Inscho, Esquire
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Counsel for Philadelphia Newspapers, LLP

Robert S. Brady, Esquire
John T. Dorsey, Esquire
Sean T. Greecher, Esquire
Yong Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
The Brandywine Building
Wilmington, DE 19801
Counsel for the Reorganized Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE:                          )    Chapter 11
                                )
ALTERRA HEALTHCARE CORPORATION  )    Case No.  03-10254 (MFW)
                                )
              Debtor.           )

## OPINION[1]

Before the Court is the Motion of the Philadelphia
Newspapers, LLC (the "Newspaper") to Intervene for the Limited
Purpose of Seeking Access to Judicial Records and Proceedings
("Motion to Intervene") and its related Motion for Access to
Judicial Records and Proceedings ("Motion for Access") which asks
the Court to vacate several Orders sealing records of settlements
in this case.  The Motions are opposed by the Reorganized Debtor.
For the reasons set forth below, the Court will grant the
Motions.


I.    BACKGROUND

On January 22, 2003, Alterra Healthcare Corporation
("Alterra") filed a voluntary petition for reorganization under
chapter 11 of the Bankruptcy Code.  The Court approved Alterra's

_____

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure, which is made applicable
to contested matters by Rule 9014 of the Federal Rules of
Bankruptcy Procedure.

1

plan of reorganization on November 26, 2003.  The reorganization plan required the Reorganized Debtor to submit for Court approval any claims settled in excess of $250,000.

On November 26, 2003, Alterra filed with the Court Motions to approve three agreements settling tort claims of the Estates of Delcia D. Lamphere, Pauline McReynolds, and Maudine Kemp.  Two of the settlements were in excess of $250,000.  None of the settlement agreements were sealed.

On March 24, 2005, the Reorganized Debtor, pursuant to section 107(b) of the Bankruptcy Code, filed a Motion to File under Seal the Application to Approve Nine Settlements by and among the Debtor and Various Claimants (the "Seal Motion").  The nine settlement agreements involved tort claims which sought relief in excess of $250,000.  There were no objections to the Seal Motion.  Accordingly, on April 27, 2005, the Court granted the Seal Motion.  The nine settlement agreements were then filed under seal on April 29, 2005, and approved by the Court on May 25, 2005.  The Reorganized Debtor filed a second Motion to file settlement agreements under seal on July 7, 2005, which was not opposed.  That motion to seal was granted by the Court on July 27, 2005.

In addition to the Motions to seal the settlements, the Reorganized Debtor filed a Motion to set a reserve for personal injury claims (the "Reserve Motion") and a Motion to file under

2

seal the Exhibit to the Reserve Motion.  The Motion to seal was
not opposed, and on January 31, 2006, the Court granted it.  On
February 10, 2006, the Court granted the Reserve Motion and
approved an aggregate reserve of $32 million for the unresolved
tort claims.

The Newspaper filed its Motion to Intervene on June 30,
2006, and the corresponding Motion for Access on July 30, 2006.
The Motion for Access asked the Court to vacate its Orders
sealing the records relating to the settlements and reserves for
personal injury claims.  The Reorganized Debtor opposed the
Motions.  Oral argument was heard on the Motions on August 7,
2006.  Briefing is complete and the matter is ripe for decision.


II.  <u>JURISDICTION</u>

This is a core proceeding over which the Court has subject
matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) &
157(b)(2)(A).


III. <u>DISCUSSION</u>

A.   <u>Standing</u>

The Newspaper asserts that the public has a right to access
the sealed documents under the First Amendment, federal common
law, and section 107 of the Bankruptcy Code.  Further, the
Newspaper contends that it has an independent right separate from

3

the public to gain access to the information.  The Reorganized

Debtor has not contested the Newspaper's standing to intervene as

a third party seeking to challenge the Seal Orders and thus

obtain access to the sealed information.

The Court concludes that the Newspaper does have standing.

Although the Newspaper asserts "rights that may belong to a broad

portion of the public at large," the Newspaper has standing

because it asserts an actual injury to itself.  United States v.

Cianfrani, 573 F.2d 835, 845 (3d Cir. 1978).  To find standing,

the Court must "only find that the Order . . . being challenged

presents an obstacle to the Newspapers' attempt to obtain access"

and that a decision to unseal the agreements would remedy the

injury.  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3d

Cir. 1994).  In this case, the Newspaper has sufficiently

established that the Seal Orders prevent it from obtaining access

and that the vacation of those Orders will redress the alleged

harm.  Accordingly, the Court concludes that the Newspaper has

standing in the present case to seek intervention.

    B.   Motion to Intervene

        1.   Proper Procedure for Access

The Reorganized Debtor argues that the Newspaper's Motion to

Intervene for the purpose of accessing the sealed agreements is

an improper collateral attack on the Court's Seal Orders.

Further, the Reorganized Debtor assumes that the Motion for

Access was filed under Rule 60(b) of the Federal Rules of Civil
Procedure but argues that a Rule 60(b) motion is not the proper
procedural mechanism for challenging the Court's alleged legal
error.  Rather, the Reorganized Debtor argues that an appeal is
the proper mechanism for seeking relief from the Court's Orders.

The Newspaper contends that the Motion to Intervene and the
corresponding Motion for Access are the proper procedure.  The
Newspaper relies upon Third Circuit case law and Bankruptcy Rule
2018(a) as the authority for its Motions to Intervene and Access.

The Court agrees with the Newspaper.  Under Rule 2018(a) of
the Federal Rules of Bankruptcy Procedure, the Court may permit a
party "to intervene generally or with respect to any specified
matter" in a bankruptcy case "after hearing on such notice as the
court directs and for cause shown."  Rule 24(b) of the Federal
Rules of Civil Procedure also provides for permissive
intervention and is made applicable to bankruptcy proceedings by
Rule 2018(a).[2]  The Third Circuit has held that parties seeking
to challenge an order sealing records must "meet the requirement
of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a

---

[2]  Rule 24(b) provides that
Upon timely application anyone may be permitted to
intervene in an action: (1) when a statute of the United
States confers a conditional right to intervene; or (2)
when an applicant's claim or defense and the main action
have a question of law or fact in common.
Fed. R. Civ. P. 24(b).

question of law or fact in common' with the main action." <u>Id.</u> at 778 (citations omitted) (concluding that "[we] agree with other courts that have held that the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action."). Accordingly, the Court concludes that the Motion to Intervene was the proper procedural mechanism to seek access to the sealed documents.

    2.  <u>Timeliness</u>

The Reorganized Debtor contends that the Newspaper's Motion to Intervene was untimely because it was filed over a year after the initial Seal Order. The Reorganized Debtor admits that Rule 2018(a) does not specify a time limit for interested parties seeking intervention. Nonetheless, it argues that the Court should consider passage of time and the resultant delay in administration of the estate when evaluating a motion to intervene. <u>See</u> 9 <u>Collier on Bankruptcy</u> ¶ 2018.08 (15th ed. Rev. 2006); <u>Prin Corp. v. Altman (In re Altman)</u>, 265 B.R. 652 (Bankr. D. Conn. 2001).

The Court disagrees with the Reorganized Debtor's argument. The <u>Altman</u> case is inapplicable because it analyzed the timeliness of a creditor's motion to intervene in an adversary proceeding under Rule 7024. 265 B.R. at 654-55. In that case, the Court concluded that the motion was untimely because

6

discovery had concluded.  Id.

More compelling is the Third Circuit's decision in Pansy. In Pansy, the Third Circuit addressed an issue similar to the one at bar and concluded that challenges to "confidentiality orders may take place long after a case has been terminated."  23 F.3d at 779.  The Pansy Court cited precedent that held a "court may properly consider a motion to intervene permissively for the limited purpose of modifying [or vacating] a [confidentiality] order even after the underlying dispute between the parties has long been settled."  Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 n.5 (3d Cir. 1993).  The issue of the validity of a "confidentiality order over a settlement agreement" is "a question ancillary to the underlying suit."  Pansy, 23 F.3d at 780 n.7.  "[W]here an intervenor is litigating an ancillary issue, the potential for prejudice to the original parties due to the delay in intervention is minimized."  Id. at 779 (citing Pub. Citizen v. Liggett Group, Inc., 858 F.2d 775 (1st Cir. 1988)).

In addition, the Third Circuit noted that if courts did not allow third parties to intervene late in a suit (or even after the suit has ended) to challenge a confidentiality order, then some third parties would not "have their day in court."  Id. at 780.  The Court explained that

> in cases dealing with access to information, the public
> and third parties may often have no way of knowing at
> the time a confidentiality order is granted what
> relevance the settling case has to their interests.

7

> Therefore, to preclude third parties from challenging a
> confidentiality order once a case has been settled
> would often make it impossible for third parties to
> have their day in court to contest the scope or need
> for confidentiality.

Id.

Other Circuits have also allowed permissive intervention for
the purpose of access to sealed records more than a year after
the underlying lawsuit was settled.  See Beckman Indus. v. Int'l
Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (approving motion to
intervene approximately two years after dispute settled); United
Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th
Cir. 1990) (allowing intervention to challenge protective order
under Rule 24(b) three years after case settled).

The Reorganized Debtor cites the Pansy case for the
proposition that the Motion to Intervene should be denied because
of the circumstances of this case.  In that case, the Third
Circuit acknowledged that "in some circumstances a trial court,
in the exercise of its discretion, may rightly conclude that
untimeliness or other factors relating to the particular claimant
justify refusal of intervention where the intervenors seek to
contest an ancillary issue."  Pansy, 23 F.3d at 780 n.9.

Such circumstances are present here, the Reorganized Debtor
contends, because the Newspaper had knowledge of the settlements
shortly after the agreements were made but engaged in
gamesmanship by waiting until the settlement motions were filed,

8

thus becoming public records, before seeking to intervene.  The
Reorganized Debtor asserts that it would not have filed the
settlements with the Court if it had known the Court may unseal
them later.

The Court rejects these arguments.  Because the settlements
could not be effective unless they were filed and approved by the
Court, the Court does not accept the Reorganized Debtor's
assertion that it would not have filed the settlements if it had
known they would be unsealed.  Further, "even though the parties
to [a] settlement agreement have acted in reliance upon [a seal]
order, they [do] so with knowledge that under some circumstances
such orders may be modified by the court."  Hartford v. Chase,
942 F.2d 130, 138 (2d Cir. 1991) (Pratt, J., concurring).
Consequently, the Court concludes that the Motion to Intervene
was timely filed.

    3.  Undue Prejudice

The Reorganized Debtor argues that the intervention will
prejudice its rights and those of third party creditors.  It
asserts that it will be forced to litigate all unresolved
personal injury claims which will result in more attorneys' fees
and will delay distributions to creditors.  It posits that the
insurance companies will find it more difficult to settle future
claims if the details of prior settlements are revealed.
Moreover, the Reorganized Debtor contends that the competitors of

9

its insurers, Liberty International Underwriters and Liberty
Surplus Insurance Corporation ("Liberty"), will obtain an unfair
advantage by having knowledge of Liberty's business practices.
See, e.g., In re Pub. Serv. Co., 88 B.R. 546, 554 (Bankr. D.N.H.
1988) (concluding that a court must consider any undue delay and
possible prejudice a party-in-interest may suffer when
determining an intervention motion) (citations omitted).

      In this case, however, the Court agrees with the Newspaper.
The Reorganized Debtor has not articulated sufficient prejudice
to it to warrant denial of the motion to intervene.  For example,
the Court is not persuaded that every unsettled claimant will
seek litigation over settlement.  See Pansy, 23 F.3d at 788.
Some claimants who want to avoid the time and expense of a
lengthy trial may consider settlement a more favorable option.
Additionally, because the Debtor's insurance is not unlimited and
the amount placed in reserve is capped, tort claimants may seek
an early settlement to ensure they receive a significant share of
the shrinking pie.

      Moreover, the Reorganized Debtor filed three unsealed
settlements before the nine sealed settlements were reached.  The
three unsealed settlements did not preclude a resolution of the
nine claims.  Therefore, the Court finds unpersuasive the
Reorganized Debtor's argument that disclosure will impair its
ability to settle future claims.  Consequently, the Court

concludes that no undue prejudice will result.  Thus, the Court will grant the Motion to Intervene.

    C.   <u>Motion for Access</u>

The Newspaper asserts that it has a right of access under the First Amendment, federal common law, and section 107(a) of the Bankruptcy Code.  The Reorganized Debtor argues that access is not available under any theory.

    1.   <u>First Amendment</u>

The Third Circuit has extended the First Amendment right of access to civil proceedings.  <u>Publicker Indus., Inc. v. Cohen</u>, 733 F.2d 1059, 1070 (3d Cir. 1984).  "[T]o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest."  <u>Id</u>. (<u>citing</u> <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596, 606-07 (1982); <u>Brown & Williamson Tobacco Corp. v. F.T.C.</u>, 710 F.2d 1165, 1179 (6th Cir. 1983)).  A First Amendment right of access applies if (1) "the place and process have historically been open to the press and general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question."  <u>Press-Enter. Co. v. Superior Court</u>, 478 U.S. 1, 8 (1986).

a.    <u>Public Access to Papers</u>

The Reorganized Debtor argues that no court has held that a First Amendment right to access applies to settlement agreements. Rather, the Reorganized Debtor argues that private settlement agreements traditionally have taken place outside the ambit of the public eye.  It further asserts that in the non-bankruptcy context, statutory law does not require the filing of settlements over a certain threshold amount, thus the agreements do not typically become public records.

The Newspaper counters that bankruptcy proceedings are different.  Such cases have historically been open to the press and general public.

The Court agrees with the Newspaper's position.  There is a strong presumption in favor of public access to bankruptcy proceedings and records.  During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fish bowl.  <u>See</u> Brad B. Erens & Kelly M. Neff, <u>Confidentiality in Chapter 11</u>, 22 Emory Bankr. Dev. J. 47, 49 (2005) ("The proposition that a chapter 11 reorganization proceeding be an open book process, however, is heavily ingrained in bankruptcy jurisprudence.  As a result, it is not likely that there will be any effort to modify the openness of such a proceeding anytime in the near future."); Jeff J. Friedman & Merritt A. Pardini, <u>Bankruptcy Behind Closed Doors (Part I)</u>, 21 No. 12 Bankr.

Strategist 1 (2004) ("One of the burdens of a bankruptcy filing is that, to a degree, the debtor's affairs become an open book. This openness has been accurately described as operating in a 'fishbowl'."); Mark D. Bloom, David M. Olenczuk, & Richard L. Wynne, <u>Reorganizing in a Fish Bowl: Public Access v. Protecting Confidential Information</u>, 73 Bankr. Dev. L.J. 775 (1999) (detailing the public's right of access in bankruptcy cases).

In fact, Congress has codified the historical practice of open access in bankruptcy. <u>See</u> 11 U.S.C. § 107(a) (2006). <u>See also</u> <u>In re Northstar Energy, Inc.</u>, 315 B.R. 425, 428 (Bankr. E.D. Tex. 2004) (stating "[Section] 107(a)'s directive for open access flows from the nature of the bankruptcy process — which is heavily dependent upon creditor participation, and which requires full financial disclosure of debtor's affairs."); <u>In re Muma Servs., Inc.</u>, 279 B.R. 478, 484 (Bankr. D. Del. 2002) (noting section 107(a)'s prescription for public accessibility in bankruptcy cases); <u>In re Epic Assocs. V</u>, 54 B.R. 445, 447 (Bankr. E.D. Va. 1985) (concluding that "[s]ection 107(a) creates a presumption in favor of public access to court records filed in bankruptcy cases").

Accordingly, in light of Congressional intent and the practice in bankruptcy proceedings, the Court concludes that documents filed in bankruptcy cases have historically been open to the press and general public.

13

b.    <u>Role Public Access Plays in Process</u>

The Newspaper argues that public access to the settlements is important because knowledge of the extent of the abuse and neglect at Alterra's facilities will aid the public in evaluating the effectiveness of government regulation of assisted living facilities.  Specifically, the Newspaper contends that the information in the settlement agreements will show what impact Alterra's financial condition had on any alleged neglect of the Alterra residents.  The Newspaper further asserts that access will assist the public in understanding the settlement process and help it gauge the merits of each claim settled.

The Reorganized Debtor, on the other hand, argues that providing access to settlement agreements filed in bankruptcy cases discourages settlements and damages the reputation and financial condition of the Reorganized Debtor.  Consequently, the Reorganized Debtor asserts that access to the settlements is not important to the process.

The Court agrees with the Reorganized Debtor.  The public already has access to the allegations of neglect and abuse which are detailed in the complaints.  The Court cannot conceive of any positive role access to the settlements could play in enabling the public to gauge the effectiveness of government regulation of the facilities.  The Court also disagrees with the Newspaper's argument that comparison of the amounts of two separate

14

settlements would show the relative value or merits of the two claims.  Parties settle disputes for many reasons, not solely because of the merits.

Therefore, the Court concludes that the second prong of the First Amendment analysis is not satisfied in this case.  Consequently, the Court concludes that there is no constitutional right of access to the sealed settlements.

### 2.  Common Law

The Newspaper asserts alternatively that there exists a federal common law right of access to sealed settlements in civil cases.  The Reorganized Debtor responds that section 107 of the Bankruptcy Code supplanted the common law right of access as it applies to bankruptcy proceedings.

The Court agrees with the Reorganized Debtor.  Section 107(a) of the Bankruptcy Code provides that "[e]xcept as provided in subsections (b) and (c) of this section, and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."  11 U.S.C. § 107(a).  Section 107(a) is "a codification of the common law general right to inspect judicial records and documents."  In re Nunn, 49 B.R. 963, 964 (Bankr. E.D. Va. 1985) (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-98 (1978)).  See also In re Orion Pictures Corp., 21 F.3d 24, 26 (2d Cir. 1994) (stating

15

that the "policy of open inspection, codified generally in §
107(a) of the Bankruptcy Code, evidences [C]ongress's strong
desire to preserve the public's right of access to judicial
records in bankruptcy proceedings").

Where a legislatively enacted regulatory scheme speaks
"directly to a question," courts should not supplement or modify
the scheme by reference to federal common law.  Milwaukee v.
Illinois, 451 U.S. 304, 315 (concluding that the Court's
"'commitment to the separation of powers is too fundamental' to
continue to rely on federal common law . . . when Congress has
addressed the problem.").  Because Congress has provided a
specific provision which deals with the right to access public
records in bankruptcy proceedings, the Court should not encroach
upon the province of Congress.  Accordingly, the Court will not
analyze the issue under federal common law.

     3.   Statutory Analysis

As noted above, section 107(a) creates a presumption that
papers filed in bankruptcy court are public records.  Muma
Servs., 279 B.R. at 484.  Congress has, however, provided a few
limited exceptions to this general rule.  See 11 U.S.C. § 107(b)
& (c).  Specifically, the Code provides that

>     (b) On request of a party in interest, the bankruptcy
>     court shall, and on the bankruptcy court's own motion,
>     the bankruptcy court may--
>         (1) protect an entity with respect to a trade
>         secret or confidential research, development,
>         or commercial information; or

```
        (2) protect a person with respect to
        scandalous or defamatory matter contained in
        a paper filed in a case under this title.
```

11 U.S.C. § 107 (b).

The Reorganized Debtor argues that the information contained in the settlement agreements is confidential or commercial information within the meaning of section 107(b).  The Reorganized Debtor asserts that disclosure of the information would (1) create an unfair advantage to unsettled claimants; (2) cause harm to unsecured creditors; (3) disadvantage the claimants who already settled; (4) provide competitors an unfair advantage through knowledge of its tort claims settling process; (5) hinder its ability to obtain insurance coverage; and (6) result in negative publicity.  The Court finds the proffered assertions unpersuasive.

Commercial information is information which would result in "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor."  In re Orion Pictures Corp., 21 F.3d at 27-28 (citing Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).  "[D]isclosure of [the] information [must] reasonably be expected to cause the entity commercial injury."  Northstar Energy, 315 B.R. at 429 (citing In re Global Crossing, Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003)).  Moreover, the Court must find that information contained

17

in the sealed settlement agreements "is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors."  In re Barney's, Inc., 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996) (citation omitted).

The Court concludes that the information in the settlements is not confidential commercial information.  It does not relate to the Reorganized Debtor's commercial operations nor does it unfairly advantage competitors.  Cf., Orion Pictures, 21 F.3d at 27-28 (holding that a license agreement authorizing a licensee "to reproduce, manufacture, distribute, and sell videocassettes of three films" contained confidential commercial information); Northstar Energy, 315 B.R. at 430-31 (holding that a list of investors in the debtor's oil and gas business was confidential commercial information); Farmland Indus., 290 B.R. 364, 369-70 (Bankr. W.D. Mo. 2003) (holding time lines for marketing and selling assets established in a financing agreement between the debtor and pre-petition lenders were confidential and commercial); In re Frontier Group, LLC, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000) (finding that a list of physicians, who were placed in temporary places of employment by the debtor placement agency, was commercial in nature); Barney's, 201 B.R. at 709 (concluding that for a retailer, confidential commercial "information might include, without limitation, pricing formulae,

short and long term marketing strategies and the terms of agreements with suppliers.").

The Reorganized Debtor is in the business of providing assisted living arrangements and healthcare to elderly residents with Alzheimer's and other geriatric related diseases. Therefore, the monthly charges for housing elderly residents in one of the assisted living facilities would relate to the business's commercial operations. The average cost of caring for the elderly residents is also commercial and sensitive in nature. None of that commercial information is implicated here.

The Reorganized Debtor argues that if the unsettled claimants are privy to the settlement amounts, the claimants will use this information as leverage to force higher settlements in their respective cases. An unfair advantage to a tort claimant (creditor) of a debtor, however, does not create an unfair advantage to its market competitors.

The Reorganized Debtor also contends that the disclosure will cause harm to the general unsecured creditors by reducing the value of the estate. The Reorganized Debtor argues that if the unsettled claimants bargain for higher settlement amounts, the non-tort general unsecured creditors will receive a lower distribution. The Court is unpersuaded. The insurer Liberty is responsible for defending the unresolved claims up to its policy limits. The Reorganized Debtor has also set aside a reserve of

$32 million for these unresolved tort claimants.  Thus, it is unclear if the release of this information will impact the other creditors of the Reorganized Debtor.

Similarly, the assertion that the claimants who already settled will be disadvantaged because they were not privy to the settlement amounts in the others' suits is irrelevant.  The test is whether competitors will gain an unfair advantage.  Further, those claimants did have access to the three settlement agreements that were filed unsealed.

The Court also does not agree with the fourth and fifth points of contention.  The Reorganized Debtor has failed to show how the process of handling tort claims is a critical part of its operations and would result in an unfair advantage in the hands of its competitors.  The Reorganized Debtor's concern that competitors may use the allegations contained in the tort claims in their marketing material to attract its customers does not support keeping the settlement agreements sealed because all the facts relating to the injuries (except the dollar amount of the settlements) are already a matter of public record.  Moreover, three prior settlements were not sealed.  Therefore, the harm (if any) has already been felt.  Furthermore, the possibility that disclosure will result in negative publicity or embarrassment to a company is not a ground for sealing records under section 107(b).  Muma Servs., 279 B.R. at 484.

20

Additionally, although the Reorganized Debtor's witness, Alterra's Director of Legal Affairs, testified that insurance providers base coverage on whether a company seeks confidentiality agreements in its settlement process, the Court is not convinced that coverage will be denied or premiums will be higher if the Court unseals these records.

The Court concludes that the information in the sealed settlement agreements does not relate to the commercial operations of the Reorganized Debtor. Accordingly, the Court concludes that section 107(b) is not applicable. Consequently, the information should be a matter of public record under section 107(a).

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the Newspaper's Motions to Intervene and for Access. The Court's Orders sealing the settlement agreements and exhibit to the Reserve Motion will be vacated.

An appropriate Order is attached.


Dated: October 16, 2006              BY THE COURT:



                                     Mary F. Walrath
                                     United States Bankruptcy Judge

21